UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.:

**Alberto Carrion** and **Wilberto Rodriguez**, each individually and on behalf of others similarly situated,

    Plaintiffs,

vs.

**Miami Lakes AM, LLC**, a Florida limited liability company d/b/a "Miami Lakes AutoMall" and
**Ali Ahmed**, individually,

    Defendants.

CLASS REPRESENTATION

## FAIR LABOR STANDARDS ACT COMPLAINT

Plaintiffs Alberto Carrion, Wilberto Rodriguez, and others similarly situated, sue Defendants, Miami Lakes AM, LLC d/b/a "Miami Lakes AutoMall" and Ali Ahmed, individually, and allege:

### NATURE OF THE ACTION

1. This is an action to recover damages for unpaid wages, minimum wages, liquidated damages, and other relief brought under the laws of the United States of America, the Florida Constitution, Florida statutes, and under common law.

### JURISDICTIONAL ALLEGATIONS

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331 (federal question), 1337 (commerce), and 1367 (supplemental).

3. This action is authorized by the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"); by the Florida Constitution, § 24 (e), Art. X; and by § 448.110(6), Florida Statutes (the "Florida Minimum Wage Act" or "FMWA").

**PARTIES**

4. Plaintiff Alberto Carrion ("Carrion") worked as an automobile salesperson at a conglomerated automobile dealership location known as "Miami Lakes AutoMall" which sells various brands from a single location at or near the intersection of the Palmetto Expressway and N.W. 57th Avenue in Miami-Dade, Florida. Carrion worked at "Miami Lakes AutoMall" from January of 2016 until approximately March 20, 2023. Carrion, together with any other person who may hereafter consent to join in this lawsuit, is an "employee" within the meaning of 29 U.S.C. § 203(e) and within the meaning of Florida Statutes §§ 448.101(2), 448.110(3) and the Florida Constitution Art. X, § 24(b).

5. Plaintiff Wilberto Rodriguez ("Rodriguez") also worked as an automobile salesperson at a conglomerated automobile dealership location known as "Miami Lakes AutoMall" which sells various brands from a single location at or near the intersection of the Palmetto Expressway and N.W. 57th Avenue in Miami-Dade, Florida. Rodriguez, worked at "Miami Lakes AutoMall" from 2010 until approximately March 20, 2022. Rodriguez, together with any other person who may hereafter consent to join in this lawsuit, is an "employee" within the meaning of 29 U.S.C. § 203(e) and within the meaning of Florida Statutes §§ 448.101(2), 448.110(3) and the Florida Constitution Art. X, § 24(b).

6. Defendant Miami Lakes AM, LLC d/b/a "Miami Lakes AutoMall" is a Florida limited liability company which owns and operates the closely, privately held automobile dealership conglomerate at which the Plaintiffs and others similarly situated worked. Miami Lakes AM, LLC, is operated by and through, directly and indirectly, its principal and officer, Defendant

Ali Ahmed ("Ahmed"). Defendants together operate under the fictitious name of "Miami Lakes AutoMall". Ahmed is an employer of the Plaintiffs in that he, directly and indirectly through his designees, exercises operational control over the conglomerated dealership operations.

7. At all relevant times, Defendants, each of them individually and together as a group, was a "person" and an "employer" within the meaning of the 29 U.S.C. § 203 (a) and (d) and within the meaning of Florida Statute §§ 448.101(3) and 448.110(3). Defendants may be hereafter referred to jointly as the "Employer" or "Defendants".

8. At all relevant times, Defendants, individually and together as a group, acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and the FMWA.

9. At all relevant times, Defendants employed employees engaged in commerce or in production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 203(b), (i) and (j).

10. The Employer is, and at all times material to this action was, an organization which sells and/or markets and/or transports services and/or goods and materials from all over the world, and in doing so, it employs persons who regularly handle goods and materials which have travelled in interstate commerce.

11. The annual gross revenue of the Employer, individually or together, was at all times material to this action in excess of $500,000.00 per annum.

12. By reason of the foregoing, at all relevant times the Employer was an enterprise engaged in commerce or in the production of goods for commerce as defined in Sections 3(r) and 3(s) of the FLSA, 29 U.S.C., §§ 203(r) and 203(s). Further, the Plaintiffs and others similarly situated were individually engaged in commerce by virtue of the nature of their work.

## CLASS ALLEGATIONS

13. The named Plaintiffs are similarly situated to an untold number of other salespersons who work or have worked for the Employer at the conglomerated dealership location known as "Miami Lakes AutoMall" during any part of the five-year period commencing July 3, 2018 through the present.

14. The named Plaintiff and those similarly situated work or worked under a "commissions-only" pay plan in place at the dealership. On a bi-weekly basis salespersons are paid either the commissions generated during the established bi-weekly pay period based upon the number of automobiles sold by each respective salesperson, if greater, or they are paid a variable sum purporting to represent a minimum hourly wage for each hour "logged" during the bi-weekly pay period. In either case, the amounts paid are treated as compensation from which all applicable tax and related withholdings are deducted. However, as a matter of practice and policy, any amounts paid to salespersons on account of hours "logged" are subsequently, automatically deducted by the Employer from commissions earned by the salespersons, in perpetuity.

15. When employees are paid a supposed hourly wage for the hours "logged", they are considered to be "in the hole". Thus, any amount paid on account of hours during a given bi-weekly pay-period is not paid finally and unconditionally but, rather, is treated by the Employer as money owed to it by sales personnel, which debt they automatically and systematically withdraw from commissions earned after employees are paid the wages. Thus, hourly wages are treated as money owed to the Employer, until completely repaid from commissions earned in perpetuity. The "hole" is a debt to the Employer owed by salespersons which is collected until repaid in full.

16. The named plaintiff and those similarly situated were routinely scheduled and required to work approximately one hundred and thirty (130) hours or more during bi-weekly pay

4

periods. However, throughout many pay periods, the named Plaintiffs and those similarly situated were paid less than the minimum wage required for every hour worked during bi-weekly pay periods.

17. The Employer maintains a method of timekeeping which would or could reflect the actual number of hours worked by sales personnel. However, because the payment of wages based upon hours logged effectively results in a perpetual debt owing to the Employer, the system is not reliable, encourages the underreporting of hours worked, and is not meaningfully enforced.

18. Only commissions generated as provided under published pay plans are actually and unconditionally paid, although they are often not paid on the regularly scheduled pay day as required by law.

19. The Employer further avoids the responsibility of paying a minimum wage to sales personnel during every established pay-period by taking unjustified deductions from the time actually logged by employees as well as through unjustifiable deductions, and claw-backs from earnings which are retained by the Employer from Plaintiffs' commission earnings.

20. On numerous occasions during the period of time covered by this Complaint, the Plaintiff, and those similarly situated, generated fewer sales commissions than are necessary to cover the required minimum wage for all hours actually worked, or they sometimes were not paid all of their earned commissions and bonuses under the pretext that they were unqualified for such compensation as a result of being "in the hole" or other unjustified reason.

## **ATTORNEY'S FEES**

21. Plaintiffs have engaged the services of the undersigned attorneys and have agreed to pay reasonable attorney's fees for their services.

**ENTITLEMENT TO ATTORNEY'S FEES**

22. Plaintiffs are entitled to an award of attorney's fees and costs pursuant to, *inter alia*, 29 U.S.C. §§ 201-219; Florida Statute § 448.110(6), and Florida Statute § 448.08.

**– COUNT I –**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Failure to Pay Minimum Wages)**

Plaintiffs reallege paragraphs ¶¶ 1 through 22, above, as though fully set forth herein.

23. At all times during their employment, the Plaintiffs, and others similarly situated, were employees required to be finally and unconditionally paid a minimum hourly wage during each respective pay period for every hour actually worked during said bi-weekly pay period.

24. Since on or before July 2020 through the present, the Employer violated the provisions of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2) by failing to pay the Plaintiffs and other similarly situated salespersons a minimum hourly wage during numerous applicable pay periods by, among other factors: (a) failing to finally and unconditionally pay at least the applicable minimum hourly wage for every hour worked during numerous covered pay periods as required by law; (b) maintaining a system which effectively encourages the underreporting of hours worked, and; (c) making unjustified deductions and reductions from earned compensation to minimize payroll obligations.

25. At all times material to this action, the Employer failed to comply with 29 U.S.C. §§ 201-219 and 29 C.F.R., § 516.1, *et. seq.*, in that Plaintiffs and those similarly situated performed services for the benefit of the Defendants for which they were paid below the minimum wage rates required under both federal law and under applicable Florida law and Constitution, which typically higher minimum wage rates are made applicable under the FLSA and regulations. Other persons who may become plaintiffs in this action also provided labor as hourly-rate employees and/or

former employees of the Employer and have also been systematically paid less than the applicable minimum hourly wage, for the reasons set forth above.

26.     The Employer knew or showed a reckless disregard for the provisions of the FLSA concerning the payment of minimum wages and remains owing the named Plaintiffs and other similarly situated employees a minimum wage for every hour worked during the three-year period preceding this lawsuit or the earlier written demand for payment.

WHEREFORE, Plaintiffs and others similarly situated request damages equal to all unpaid minimum wages, liquidated damages in an amount equal to unpaid wages, together with reasonable attorney's fees and costs, to be proven at the time of trial. In the event that Plaintiffs do not recover liquidated damages as allowed, then Plaintiffs and those similarly situated demand an award of prejudgment interest as a lesser alternative to liquidated damages.

– COUNT II –
**VIOLATION OF THE FLORIDA CONSTITUTION AND FMWA**
**(Failure to Pay Minimum Wages)**

Plaintiffs reallege paragraphs ¶¶ 1 through 22, above, as though fully set forth herein.

27.     Since on or before July 2018 through the present, the Plaintiffs and others similarly situated were required to be paid a minimum hourly wage for every hour worked for the Employer.

28.     At all times during their employment, Defendants violated the provisions of the Florida Constitution and Florida Statute § 448.110 by failing to pay Plaintiffs and other similarly situated salespersons a minimum hourly wage during numerous applicable pay periods by, among other factors: (a) failing to finally and unconditionally pay at least the applicable minimum hourly wage for every hour worked during numerous covered pay periods as required by law; (b) maintaining a system which effectively encourages the underreporting of hours worked, and; (c)

by retaining earned commissions, and making unjustified deductions and reductions from earned compensation to minimize payroll obligations.

29. Plaintiffs have satisfied any condition precedent to filing this action, if any.

30. The Employer knew or showed a reckless and willful disregard for the provisions of the Florida Constitution, the Florida Minimum Wage Act, and the FLSA concerning the timely payment of minimum wages for all hours worked, and accordingly remains owing to the named Plaintiffs and other similarly situated employees, unpaid minimum hourly wages for every hour worked during each respective pay period, and liquidated damages based upon the tardy or non-payment of wages due.

WHEREFORE, Plaintiffs and others similarly situated demand the following: liquidated damages for the untimely payment of wages after the scheduled pay-date; payment of unpaid minimum wages for every hour worked during applicable pay periods, together with reasonable attorney's fees and costs, to be proven at the time of trial. In the event that Plaintiffs do not recover liquidated damages as allowed, then Plaintiffs and those similarly situated demand an award of prejudgment interest as a lesser alternative to liquidated damages.

## – COUNT III –
## BREACH OF AGREEMENT TO PAY WAGES
### (Failure to Pay Earned Wages and Commissions)

Plaintiffs reallege paragraphs ¶¶ 1 through 22, above, as though fully set forth herein.

31. At all times during their employment, the Plaintiff and those similarly situated were employees whom the Employer had agreed to pay at wages representing the greater of a minimum hourly wage for every hour worked during corresponding pay periods, or commissions earned during each pay period.

32. Toward this end, the Employer promised to calculate and finally pay commissions due or, if greater, a minimum hourly wage, on a bi-weekly period. Hourly wages were not to be clawed back by the Employer beyond the bi-weekly pay period during which they were earned.

33. The Employer breached the agreement to pay wages and commissions by, among other factors, clawing back wages paid on account of hours worked from commissions subsequently earned in subsequent pay periods, by withholding and retaining commissions earned during employment, and by making deductions from earned commissions.

34. The Employer also breached the agreement to pay wages and commissions by secreting sales profits – from which sales commissions are calculated – through a series of accounting escamotages, including by adding undisclosed and fictitious "Pack" charges and Dealer Fees as a cost of vehicles to the dealer, and secreting MSRP "Holdback" payments the manufacturer makes directly to the dealer after vehicles are sold, all accomplished to diminish the percentage of gross revenues used in calculating the commissions promised under the pay plan.

WHEREFORE, Plaintiffs and others similarly situated demand the following: payment of all accrued unpaid wages and commissions, wrongfully confiscated wages and commissions, together with all payments promised under the pay plan, in an amount to be proven at the time of trial; accrued interest on those sums at the applicable judgment rate of interest, and attorney's fees and costs of the action.

## JURY TRIAL DEMAND

35. Plaintiffs and those similarly situated who hereafter consent to join this lawsuit, demand trial by jury of all issues, claims and defenses that are triable as of right by a jury.

Dated:  July 19, 2023

Respectfully submitted,

ANTHONY F. SANCHEZ, P.A.
Attorneys for Plaintiffs
6701 Sunset Drive, Suite 101
Miami, Florida 33143
Tel.: 305-665-9211

By:  /s/ Anthony F. Sanchez
    Anthony F. Sanchez
    Florida Bar No.789925
    afs@laborlawfla.com

10