United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alberto Carrion and Wilberto Rodriguez, each individually and on behalf of all others similarly situated, Plaintiffs, <br><br> v. <br><br> Miami Lakes AM, LLC, a Florida limited liability company d/b/a "Miami Lakes AutoMall" and Ali Ahmed, individually, Defendants. | Civil Action No. 23-22700-Civ-Scola |

## Order Compelling Arbitration and Staying Case

The Plaintiffs Alberto Carrion and Wilberto Rodriguez ("Plaintiffs") bring this suit, on behalf of themselves and all others similarly situated, against the Defendants Miami Lakes AM, LLC and Ali Ahmed ("Defendants") to recover unpaid wages, minimum wages, and liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-216 ("FLSA"), the Florida Constitution and Florida Minimum Wage Act, and the parties' employment agreement. (Compl. ¶ 1, ECF No. 1.) The Defendants moved to dismiss this case to arbitration, relying on employment arbitration agreements executed by the Plaintiffs, which require them to resolve employment-related disputes through arbitration. (Mot., ECF No. 8.) The Plaintiffs responded opposing to the Defendants' motion (ECF No. 11), and the Defendants replied (ECF No. 14). For the reasons set forth below, the Court **grants in part and denies in part** the Defendants' motion, compelling arbitration, and staying, instead of dismissing, this case. (**Mot., ECF No. 8**.)

1. **Background**

The Plaintiffs worked as salespersons at a conglomerated automobile dealership known as "Miami Lakes AutoMall," which sells various automobile brands from a single location. (Compl. ¶¶ 4–5, ECF No. 1.) Carrion worked at Miami Lakes AutoMall from January 2016 until March 2023, and Rodriguez worked there from sometime in 2010 until March 2022. (*Id.*) Miami Lakes AutoMall is owned and operated by the Defendant Miami Lakes AM, LLC, which, in turn, is operated by the Defendant Ali Ahmed, its principal and officer. (*Id.* ¶ 6.) The Plaintiffs and other, similarly situated, salespersons

worked for the Defendants under a relatively complex "commissions-only" pay plan. (*Id.* ¶¶ 13–20.) The Plaintiffs allege that the Defendants' pay plan, and the way it was implemented, violated the salespersons' rights under the FLSA, the Florida Constitution and Florida Minimum Wage Act, and their employment agreements. (*Id.* ¶¶ 23–34.)

In conjunction with their work at Miami Lakes AutoMall, the Plaintiffs each executed Employment Arbitration Agreements pursuant to which they agreed to resolve all employment-related disputes with the Defendants through mandatory and binding arbitration. (*See* Employ. Arbi. Agreements, ECF No. 8-1.) Specifically, the Employment Arbitration Agreements provide, in relevant part, that the Plaintiffs agreed to

> ***settle any and all claims***, including previously unasserted claims, disputes or controversies (including the validity of this arbitration agreement) ***arising out of or relating to*** my application or candidacy for employment, ***my employment***, and/or my cessation of employment with **MIAMI LAKES AM, LLC** or its directors, officers, owners, shareholders or members, either in a corporate capacity or individually (the "Company"), ***exclusively by final and binding arbitration*** before a neutral Arbitrator exclusively in Miami-Dade or Broward County, Florida. By way of example only, such claims include but are not limited to, ***federal, state and local statutory or common law actions*** such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, as well as the Civil Rights Act of 1991 and its amendments, ***wage and hour***, the Americans with Disabilities Act and any similar ***state or local statutes***, and ***all contract, statutory and/or tort law claims***.

(*See id.* (emphases added).)[1] The Employment Arbitration Agreements further specify that they are governed by Florida law and subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. (*See id.*)

Relying on the Employment Arbitration Agreements, the Defendants argue that all the Plaintiffs' claims are subject to mandatory arbitration. (Mot., ECF No. 8.) For the same reasons, they argue that this entire case should be dismissed with prejudice. (*Id.* at ¶¶ 34–41.) After the Defendants filed their motion, two additional, former employees of the Defendants—Yamil Abraham and Jean Carlos Redondo—filed consents to join this case. (*See* ECF No. 10.) In their reply in support of their motion, the Defendants provided copies of the Employment Arbitration Agreements executed by these Opt-In Plaintiffs as well. (*See* ECF Nos. 14-1, 14-2.)

---

[1] Although the Employment Arbitration Agreements executed by the Plaintiffs contain some differences among each other, those differences are not significant here.

### 2. Legal Standard

The FAA creates a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). Courts must compel arbitration if (1) the "plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles" and (2) the "claims before the court fall within the scope of that agreement." *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2-4). Any party resisting arbitration must establish that "the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). And any "questions of arbitration must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26 (quoting *Moses*, 460 U.S. at 24).

### 3. Analysis

**A. The Plaintiffs' Claims Are Subject to Arbitration.**

**(1)** *FAA Section 1's Transportation Worker Exemption*

In their opposition to the Defendants' motion, the Plaintiffs do not contest whether their claims fall within the scope of the Employment Arbitration Agreements. Instead, the Plaintiffs' primary argument for why the Court should not compel arbitration is that the Employment Arbitration Agreements are unenforceable by virtue of the exclusionary language set out in Section 1 of the FAA. Section 1 exempts from the FAA's purview "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Because all the salespersons at Miami Lakes AutoMall were engaged in interstate commerce, the Plaintiffs argue, Section 1's exception applies, and the Employment Arbitration Agreements are unenforceable. The Defendants counter that Section 1's exception does not apply to the facts of this case, among other reasons, because the Plaintiffs are not among the class of workers contemplated by the exception. The Court agrees with the Defendants.

The Eleventh Circuit has spoken clearly on the class of workers to whom Section 1's exception applies. In *Hamrick v. Partsfleet, Ltd. Liab. Co.*, it held that "[t]he transportation worker exemption applies if the employee is part of a class of workers: (1) employed in the transportation industry; and (2) that, in the main, actually engages in foreign or interstate commerce." 1 F.4th 1337, 1349 (11th Cir. 2021). By contrast, here, neither the Plaintiffs nor their co-

workers were employed in the transportation industry, as contemplated by Section 1, nor were they actually engaged in foreign or interstate commerce.

The Plaintiffs argue that the salespersons at Miami Lakes AM were involved in the transport and movement of automobiles in the stream of commerce and, thus, are covered by Section 1. In support, they provide the declaration of Plaintiff Wilfredo Rodriguez, which details the salespersons' job responsibilities. (*See* W. Rodriguez Decl., ECF No. 11-1.) Rodriguez explained, for example, that salespersons "were responsible . . . for the movement of the vehicles on- and off-site for purposes of preparing them for sale, road testing the vehicles, demonstrating their capabilities to the customers, and preparing the vehicles for delivery to their ultimate destinations." (*Id.* ¶ 5.) However, at most, Rodriguez's declaration establishes that the salespersons were engaged in moving goods that at some point travel through interstate commerce: it does not establish that the salespersons themselves ever engaged in interstate commerce. (*See generally id.*) And, indeed, the *Hamrick* court specifically rejected "the view that the transportation worker exemption is met by performing intrastate trips transporting items which had been previously transported interstate." *Hamrick,* 1 F.4th at 1349 (cleaned up).

### (2) *Waiver of Right to Jury Trial*

The Plaintiffs next argue that the Employment Arbitration Agreements cannot be enforced because they fail to include an express waiver of the salespersons' Seventh Amendment right to a trial by jury. Because the Employment Arbitration Agreements do not specifically reference the right to a trial by jury, the Plaintiffs argue, their waiver of that right in lieu of arbitration cannot be upheld because it was not knowingly and voluntarily made. The Defendants counter that the Plaintiffs' argument must be rejected because, at a fundamental level, arbitration agreements necessarily include a waiver of the right to trial by jury because they constitute an explicit waiver of the right to sue in a courtroom altogether. In support, the Defendants point to the language of the Employment Arbitration Agreements, which state that the Plaintiffs "underst[ood] and agree[d] that any claim shall be arbitrated by a single arbitrator[.]" (*See* Employ. Arbi. Agreements, ECF No. 8-1.) The Court agrees with the Defendants.

The Eleventh Circuit has also spoken on this issue, explaining that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *See Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005) (cleaned up). In particular, the Court notes that the Employment Arbitration Agreements here also provide that "[t]he arbitrator's award shall be final and binding on all parties." (*See* Employ. Arbi. Agreements,

ECF No. 8-1.) By agreeing to have their claims definitively decided by a single arbitrator, the Plaintiffs undoubtedly must have known and understood that the same claims could not be decided by a jury. In short, "where a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes." *Caley*, 428 F.3d at 1372.

### (3) *Statute of Frauds*

In addition, the Plaintiffs argue that the Employment Arbitration Agreements are not enforceable to the extent they are not in writing and signed by each Plaintiff or Opt-In Plaintiff. In support, the Plaintiffs cite to the provision of the Florida statute of frauds applicable to "any agreement that is not to be performed within the space of 1 year from the making thereof[.]" *See* Fla. Stat. § 725.01. The Plaintiffs' argument is flawed for various reasons.

To begin, it is unlikely that the one-year provision of the statute of frauds would apply to preclude enforcement of the Employment Arbitration Agreements at issue here, even if they were not reduced to writing. This is because Florida law is clear that, if it is possible to perform an oral contract of indefinite duration within one year of its inception, then it falls outside the statute of frauds. *See Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015). ("It is well settled that the oral contracts made unenforceable by the statute because they are not to be performed within a year include only those which *cannot* be performed within that period."). The Plaintiffs do not argue that it would have been impossible for the parties to perform their arbitration agreements within a year of their execution. Moreover, it is perfectly feasible that a dispute could have arisen shortly after a salesperson began work for the Defendants, which was resolved in arbitration within a few months thereafter. Accordingly, the Plaintiffs have not demonstrated that the one-year provision of Fla. Stat. § 725.01 is even relevant here.

Regardless, and perhaps more importantly, the Defendants have produced executed copies of the Employment Arbitration Agreements for all the Plaintiffs and Opt-In Plaintiffs currently involved in this case. (*See* ECF Nos. 8-1, 14-1, 14-2.) Neither Plaintiffs nor Opt-In Plaintiffs have raised any objections as to the authenticity of those Agreements. Accordingly, the statue of frauds argument is moot as to at least these claimants.

To the extent the Plaintiffs intended to argue that the statute of frauds precludes the Court from compelling arbitration as to salespersons who have yet to join this action because those salespersons' Employment Arbitration Agreements have not been produced, that issue is also moot, as the Court's decision today is limited to the Plaintiffs and Opt-In Plaintiffs. It does not seem that the Defendants are moving to compel arbitration as to salespersons who

have yet to join this action. However, even if they were, the Court would not have jurisdiction to grant such relief against putative plaintiffs. As the Eleventh Circuit has explained in an analogous context, "it [is] impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions [to compel] before [a] class [action] [i]s certified." *See Gutierrez v. Wells Fargo Bank*, NA, 889 F.3d 1230, 1238 (11th Cir. 2018); *Larsen v. Citibank FSB (In re Checking Account Overdraft Litig.)*, 780 F.3d 1031, 1037 (11th Cir. 2015) (same).

Accordingly, the Court rejects the Plaintiffs' statute of frauds objections to the enforceability of the Employment Arbitration Agreements.

### (4) *Purported Need for Judicial Action*

Finally, although it is not totally clear, the Plaintiffs also seem to argue that the Employment Arbitration Agreements cannot be enforced because the statutory causes of action they raise contemplate judicial involvement. Again, the Plaintiffs do not argue that their claims fall outside the scope of the Employment Arbitration Agreements, but only that judicial action is specifically contemplated by some of the statutory provisions at issue. However, as the Defendants correctly point out, the Plaintiffs have agreed to resolve all employment-related disputes with the Defendants via arbitration, including all "federal, state and local ***statutory*** or common law actions[.]" (*See* Employ. Arbi. Agreements, ECF No. 8-1 (emphasis added).) The Plaintiffs do not point to any provisions in the relevant statutes precluding arbitration. *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) ("[T]he FLSA contains no explicit provision precluding arbitration[.]"). Moreover, the fact that the statutes may employ the term "court" when referring to the decision-maker does not undermine the parties' election to have the arbitrator act as the decision-maker instead.

In sum, as set forth above, the Plaintiffs fail to convince the Court that the Employment Arbitration Agreements are not enforceable.

### B. The Case Will Be Stayed, Not Dismissed.

The Defendants argue that, upon compelling arbitration, the Court should dismiss this action with prejudice because all the issues raised in the complaint must be addressed in arbitration and no other remedies are available to the Plaintiffs in these proceedings. The Plaintiffs counter that the case should instead by stayed pending arbitration, as the FAA contemplates a stay of proceedings as the sole remedy for a party seeking enforcement of an

arbitration agreement. The Court agrees with the Plaintiffs that a stay is the more appropriate course in this case.

Section 3 of the FAA provides that if any suit is brought before a federal court upon an issue that the parties have agreed should be arbitrated, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3. The Plaintiffs have expressed concerns that if this case is dismissed, they will suffer adverse effects related to, for example, the running of the statute of limitations on their FLSA claim. The Court interprets the Plaintiffs' arguments on this point as a request to stay this action, rather than dismiss it, and therefore finds it is obligated to stay the case. *See Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). This is so even though the Court has found that all the Plaintiffs' claims are arbitrable. *Compare Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (affirming the district court's grant of a motion to compel arbitration and dismissal of case where there was no indication that either party applied for a stay), *with Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (finding that the district court erred in dismissing, rather than staying, case subject to order compelling arbitration); *see also Branch v. Ottinger*, 477 F. App'x 718, 721 (11th Cir. 2012) ("A district court is required to stay a pending suit when it is satisfied that only arbitrable issues remain.").

### C. The Defendants Have Not Demonstrated Entitlement to Attorney's Fees.

At the end of their motion, the Defendants make a cursory argument that they are entitled to attorney's fees. Although the Plaintiff does not address this issue in its response, the Court finds that the Defendants are not entitled to an award of attorney's fees at this time.

Both federal and Florida court follow the "American Rule" regarding the recovery of attorney's fees. *See Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126, 135 S. Ct. 2158, 192 L. Ed. 2d 208 (2015); *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004). "Under the 'American Rule,' attorney's fees in civil litigation are ordinarily borne by the party who incurs them, and a court cannot award the recovery of attorney's fees from an opposing litigant unless 'authorized by statute or by agreement of the parties.'" *Topalli v. Feliciano*, 267 So. 3d 513, 518 (Fla. 2d DCA 2019) (quoting *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1148 (Fla. 1985)); *see In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (same). Courts must strictly construe statutes and contractual provisions concerning attorney's fees. *See SE Prop. Holdings, LLC v. Welch*, 65

F.4th 1335, 1350 (11th Cir. 2023) (applying Florida law and explaining that "statutory authorization for attorney fees is to be strictly construed."); *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018) (applying Florida law and explaining that "contractual attorney's fee provision must be strictly construed").

Here, the only support that Defendants cite for their attorney's fees request is Fla. Stat. § 448.08—the provision of the Florida Minimum Wage Act that permits a Court to "award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." That provision is not applicable here because the merits of the Plaintiffs' claims pursuant to Florida Minimum Wage Act have not been decided and, as such, the Defendants are obviously not the "prevailing party" for purposes of the statute. *See, e.g.*, *Tradespot Mkts. Inc. v. Icaro Media Grp. Inc.*, No. 21-62295-CIV-RUIZ/STRAUSS, 2022 U.S. Dist. LEXIS 163990, at *7 (S.D. Fla. Sep. 12, 2022) (Ruiz, J.) (concluding that defendants who had successfully moved to compel arbitration were not entitled to contractual prevailing party attorney's fees because "this was merely a procedural victory"). As the Defendants otherwise fail to cite any other support for their claim to attorney's fees, the Court denies their request.

### 4. Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** the Defendants' motion to dismiss this case to arbitration. (**Mot., ECF No. 8**.) The Plaintiffs and Opt-In Plaintiffs must submit their claims to arbitration, and this case is hereby **stayed** during the pendency of the arbitration. The Plaintiffs and Opt-In Plaintiffs must file a status report on **January 31, 2024**, and **every 90 days thereafter**, notifying the Court of the status of the arbitration. The Clerk is directed to **administratively close** this case. Any pending motions are **denied as moot**.

**Done and ordered** at Miami, Florida on November 2, 2023.

_____
Robert N. Scola, Jr.
United States District Judge